IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ROBERT SWINDOL                                                                           PLAINTIFF

V.                                                               CIVIL ACTION NO. 1:13-CV-00237-SA-DAS

AURORA FLIGHT SCIENCES
CORPORATION                                                                              DEFENDANT

MEMORANDUM OPINION

This cause comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint [4]. Upon due consideration of the motion, responses, rules, and authorities, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff Robert Swindol brings this diversity action against his previous employer, Aurora Flight Sciences Corporation ("Aurora"), alleging wrongful discharge and defamation/slander per se under Mississippi law based upon the termination of his employment. Swindol alleges that on May 31, 2013 he was terminated for having a firearm inside his locked vehicle on Aurora property. Swindol was told that he would be arrested if he returned to Aurora's property and was escorted from the premises by Lowndes County, Mississippi sheriff's deputies. Swindol further alleges that the human resources manager, during a subsequent plant-wide meeting, informed all Aurora employees that Swindol was a security risk and instructed them to call 911 if Swindol was seen anywhere near the premises or risk their own employment.

Swindol filed suit in this Court alleging that he was wrongfully terminated in violation of public policy and that he suffered damages as a result of Aurora's defamatory statements. Aurora has filed a Motion to Dismiss, contending that Swindol has failed to state a claim upon which relief can be granted. Aurora argues that Swindol's allegations do not fit within any

recognized exception to Mississippi's employment at-will doctrine, that Swindol has failed to allege sufficient facts to support his claim for defamation/slander per se, and that Aurora is protected from Swindol's defamation/slander per se claim by a qualified privilege. Swindol has responded to Aurora's motion, and these issues are now ripe for the Court's review.

*Motion to Dismiss Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., 129 S. Ct. 1937.

A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U .S. Unwired, Inc., 565 F.3d 228, 232–33 (5th Cir. 2009). However, a court is not bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678–79, 129 S. Ct. 1937. A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. Id., 129 S. Ct. 1937. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Twombly, 550 U.S. at 555, 127 S. Ct. 1955. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. Lormand, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed. Twombly, 550 U.S. at 555, 127 S. Ct. 1955.

Additionally, an otherwise plausible claim to relief can still fail if it contains a "built-in-defense" so that the complaint is "essentially self-defeating." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004). In other words, a court may dismiss under Rule 12(b)(6) "[w]hen a successful affirmative defense appears on the face of the pleadings . . . ." Miller v. BAC Home Loans Servicing L.P., 726 F.3d 717, 725–26 (5th Cir. 2013) (quoting Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex., 20 F.3d 1362, 1366 (5th Cir. 1994)). This type of dismissal is routine practice within the context of statutes of limitations, see e.g., Newman v. Coffin, 464 F. App'x 359, 362–63 (5th Cir. 2012), and qualified immunity. See e.g., Rios v. City of Del Rio, Tex., 444 F.3d 417, 423–27 (5th Cir. 2006). This Court has even dismissed under 12(b)(6) based on worker's compensation immunity. See Whitehead v. Zurich Am. Ins. Co., 296 F. Supp. 2d 705, 708 (N.D. Miss. 2002) aff'd, 348 F.3d 478 (5th Cir. 2003). Nonetheless, the dismissal is premature unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema, 534 U.S. 506, 507, 122 S. Ct. 922, 152 L. Ed. 2d 1 (2002).

*Analysis and Discussion*

Because this is a case of diversity jurisdiction, the Court analyzes Swindol's claims in light of Mississippi law, mindful that it "is Erie-bound to apply state law as it currently exists, and may not change that law or adopt innovative theories of recovery." Solomon v. Walgreen Co., 975 F.2d 1086, 1089 (5th Cir. 1992) (citations omitted).

<u>Wrongful Discharge</u>

For over 150 years, Mississippi has followed the employment-at-will doctrine. Butler v. Smith & Tharpe, 35 Miss. 457 (1858); Kelly v. Miss. Valley Gas Co., 397 So. 2d 874, 874 (Miss. 1981). "[A]bsent an employment contract expressly providing to the contrary, an

3

employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." Shaw v. Burchfield, 481 So. 2d 247, 253–54 (Miss. 1985).

The Mississippi Supreme Court has recognized only two exceptions to the at-will doctrine. Senseney v. Miss. Power Co., 914 So. 2d 1225, 1228-29 (Miss. Ct. App. 2005). First, if an employer publishes and disseminates an employee manual setting forth procedures to be followed in the event of an employee's infraction of rules, then the employer must abide by those published procedures. Bobbitt v. The Orchard, Ltd., 603 So. 2d 356, 357 (Miss. 1992). Second, the Mississippi Supreme Court has created a "narrow public policy exception," allowing an at-will employee to bring a wrongful termination action if he was discharged for "refus[ing] to participate in an illegal act" or for "reporting illegal acts of his employer." McArn v. Allied Bruce-Terminix Co., Inc., 626 So. 2d 603, 607 (Miss. 1993).

Relying upon article 3, section 12 of the Mississippi Constitution[1] and Section 45-9-55 of the Mississippi Code,[2] Swindol argues that Mississippi has a well-established public policy of advancing the rights and interests of its citizens to bear arms and urges the Court to adopt a new public policy exception to Mississippi's common law at-will employment doctrine, allowing a cause of action for wrongful discharge where an employer terminates an employee for exercising that right by keeping a firearm in a locked vehicle parked on the employer's property. However, it is not for federal courts "to adopt innovative theories of [state law], but simply to apply that

---

[1] "The right of every citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power when thereto legally summoned, shall not be called in question, but the legislature may regulate or forbid carrying concealed weapons." MISS. CONST. ART. III, § 12.

[2] "Except as otherwise provided in subsection (2) of this section, a public or private employer may not establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area." MISS. CODE. ANN. § 45-9-55(1).

4

law as it currently exists," Jackson v. Johns-Manville Sales Corp., 781 F.2d 394, 397 (5th Cir. 1986) (citation omitted), abrogated in part by Salve Regina Coll. v. Russell, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). Rather, the Court must attempt "to rule as [it] believe[s] the state's highest tribunal would rule." Id. (citation omitted). "If the law of Mississippi is to be changed, [i]t is up to the Supreme Court of [Mississippi] and not this court to change the substantive law of that state." Id. (internal quotation marks and citation omitted).

Despite the Mississippi Supreme Court's statement in McArn that "there should be *in at least two circumstances*, a narrow public policy exception to the employment at will doctrine," 626 So. 2d at 607 (emphasis added), Mississippi courts have steadfastly refused in the more than twenty years since to expand the exceptions carved out by McArn or to recognize any additional public policy exceptions. See DeCarlo v. Bonus Stores, Inc., 989 So. 2d 351, 358 (Miss. 2008) (refusing to "extend the narrowly carved-out exceptions to our employment-at-will doctrine to create individual liability" where the individual defendant was acting in the course and scope of his employment); Jones v. Fluor Daniel Servs. Corp., 959 So. 2d 1044, 1047 (Miss. 2007) (refusing to extend McArn public policy exception for the reporting of illegal acts to acts that were not related to defendant's business); Buchanan v. Ameristar Casino Vicksburg, Inc., 852 So. 2d 25, 26-27 (Miss. 2003) (refusing to recognize claim for wrongful termination by plaintiff who was allegedly terminated in retaliation for exercising her statutory right to file a claim for workers' compensation benefits); Miranda v. Wesley Health Sys., LLC, 949 So. 2d 63, 69 (Miss. Ct. App. 2006); Hammons v. Fleetwood Homes Of Mississippi, Inc., 907 So. 2d 357, 360 (Miss. Ct. App. 2004) (limiting the McArn public policy exception to "acts complained of [that] warrant the imposition of criminal penalties, as opposed to mere civil penalties") (citation omitted). See also Wheeler v. BL Dev. Corp., 415 F.3d 399, 404 (5th Cir. 2005) ("To assist Appellants in

5

broadening the scope of what the Mississippi Supreme Court and this Court have continually recognized as a "narrow public policy exception," would serve to envelope a much wider class of activities-a broadening that is at odds with the intent of the Mississippi Supreme Court when it first created the exception.") (citations omitted); Cleland v. Acad. Sports & Outdoors, 2013 WL 4519337, at *7 (S.D. Miss. Aug. 26, 2013) ("It is this Court's task to apply Mississippi law, not to make it. Consequently, the Court declines Cleland's request for it to act effectively as the Mississippi Legislature or Mississippi Supreme Court and establish a new public policy exception to Mississippi's longstanding employment-at-will doctrine based on interference with political rights.") (citations omitted), reconsideration denied, 2013 WL 5771256 (S.D. Miss. Oct. 24, 2013); Medina v. Mims Oil Co., 2005 WL 1629800 (N.D. Miss. July 11, 2005) (refusing to recognize additional public policy exception to at-will employment doctrine stating, "This court does not have the authority to make new law in Mississippi and will not do so."). It is clear that Mississippi law recognizes only two very specific and limited exceptions to the doctrine of at-will employment.

In contrast, Kentucky, the jurisdiction cited by Swindol as having recognized a public policy exception to the at-will employment doctrine under similar facts, recognizes a general public policy exception subject to certain limitations:

> 1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.
> 2) That policy must be evidenced by a constitutional or statutory provision.
> 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

Mitchell v. Univ. of Kentucky, 366 S.W.3d 895, 898 (Ky. 2012) (citing Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985)). Thus, Mitchell's holding that an employer could be liable for terminating an employee for keeping a firearm in a vehicle parked on the employer's property, in

light of Kentucky's broader framework for public policy exceptions, does not assist this Court in determining how the Mississippi Supreme Court would rule in this matter.[3] Dancer v. Bryce Corp., 2006 WL 897964, at *3 (N.D. Miss. Apr. 4, 2006) ("When a Court must make an Erie guess, it is not the Court's role to create or modify state law, but rather only to predict it."). Rather, in the face of Mississippi's longstanding reluctance to expand its existing public policy exceptions, the Court cannot say that the Mississippi Supreme Court would recognize a third exception to the doctrine of at-will employment as proposed here. As such, Swindol has failed to state a claim of wrongful discharge upon which relief may be given, and the same is therefore dismissed.

Defamation / Slander per se

Turning then to Swindol's claim for defamation/slander per se, Swindol's Complaint alleges in pertinent part:

> [T]he Aurora human resource manager arranged a plant-wide meeting and informed all other Aurora employees that Swindol was a security risk and instructed them to call 911 if Swindol were seen anywhere near Aurora's premises.
> . . .
> Aurora acted willfully and maliciously, or with gross disregard of Swindol's rights, evidenced by its treatment of him at the time of his termination, and, specifically, Aurora's highly defamatory remarks concerning him being a "security risk" or words to that effect, implying or accusing Swindol of having committed a crime, or other words claiming or implying that Swindol was a "dangerous" person not to be permitted on Aurora's premises, and, in fact, if so seen that law enforcement was to be informed, and Aurora, through its agents and employees, in the course and scope of their employment, slandered and defamed Swindol and such acts constitute slander *per se*.

---

[3] Additionally, the Kentucky statute serving as a basis for the Kentucky Supreme Court's holding specifically provided for civil causes of action where employers or other entities prohibited a person from keeping a firearm in a vehicle. See KY. REV. STAT. ANN. § 527.020(8) ("Any attempt by a person or organization, public or private, to violate the provisions of this subsection may be the subject of an action for appropriate relief or for damages in a Circuit Court or District Court of competent jurisdiction."). In the case at bar, the statute relied upon by Swindol, Section 45-9-55 of the Mississippi Code, does not provide for a private right of action and has not been cited by any court as creating a private right of action.

Under Mississippi law, claims for defamation or slander require plaintiffs to prove the following elements:

> (1) a false and defamatory statement concerning the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Bros. v. Winstead, 129 So. 3d 906, 928 (Miss. 2014) (citing Franklin v. Thompson, 722 So. 2d 688, 692 (Miss. 1998) (citations omitted)). "Slander requires proof of 'special harm' unless the statements were actionable per se." Speed v. Scott, 787 So. 2d 626, 632 (Miss. 2001) (citation omitted). Statements are considered actionable per se if they are:

> (1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment. (2) Words imputing the existence of some contagious disease. (3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof. (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business; and in this and some other jurisdictions (5) words imputing to a female a want of chastity.

Winstead, 129 So. 3d at 928-29 (quoting Speed, 787 So. 2d at 632).

Aurora contends that Swindol has failed to allege that it made any defamatory statement toward him because the alleged statements by its human resources manager were neither false nor slander per se. Swindol contends that the human resources manager's statements calling him a "security risk" and instructing Swindol's former coworkers to call 911 if they saw him on Aurora's premises constituted slander per se because they imputed that Swindol had committed "some criminal offense involving moral turpitude" and a "want of integrity" on Swindol's part. However, "to state a claim for defamation, it is necessary that the defamation be 'clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.'" Perry v. Sears, Roebuck & Co., 2010 WL 1427334, at *2 (N.D. Miss. Apr. 8, 2010) (quoting Ferguson v. Watkins, 448 So. 2d 271, 275 (Miss. 1984)). The alleged statements at

8

issue do not clearly and unmistakably impute to Swindol the commission of a crime, much less a crime of moral turpitude.[4]

Further, comments are not considered actionable per se merely because they impute a want of integrity, but rather such a lack of integrity must be related to "the conduct of a [plaintiff's] profession, trade or business." Winstead, 129 So. 3d at 928 (citations omitted). The alleged statements at issue here do not pertain to the manner in which Swindol conducted his profession, trade or business and therefore are not slanderous per se. Still, the alleged comments may be actionable since Swindol has alleged that the statements caused him to suffer special harm in the form of loss of income. "Special harm is the loss of something having economic or pecuniary value." Speed, 787 So. 2d at 632.

"Defamation is that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." Id. at 631 (internal quotation marks and citation omitted). While Swindol alleges in his Complaint that the statements by the human resources manager were "highly defamatory," he fails to allege that they were false. Further, Aurora argues that it is protected from liability for any allegedly defamatory statements by a qualified privilege.

> When analyzing defamation claims, Mississippi courts employ a bifurcated process. First, the Court must determine whether the occasion called for a qualified privilege. If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse.

---

[4] See Smith v. White, 799 So. 2d 83, 86 (Miss. 2001) ("[I]t is not enough that an act could be penalized under a criminal code. Rather, the crime must be one involving moral turpitude, which has been defined as 'inherent baseness or vileness of principle in the human heart ... shameful wickedness, so extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community.'") (quoting Speed, 787 So. 2d at 633).

Eckman v. Cooper Tire & Rubber Co., 893 So. 2d 1049, 1052 (Miss. 2005) (citing Garziano v. E.I. Dupont de Nemours & Co., 818 F.2d 380, 386-87 (5th Cir. 1987)).

Under Mississippi law:

> A communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith.

Id. (citation omitted). Swindol's Complaint alleges that Aurora's human resources manager "arranged a plant-wide meeting and informed all other Aurora employees that Swindol was a security risk . . . ." The Court is persuaded that such allegations, where the human resources manager's statements as alleged in the Complaint were restricted to issues of safety and made only to those who had a corresponding interest in plant safety, are sufficient that the affirmative defense of qualified privilege may be said to "appear[] on the face of the pleading[]." Kansa Reinsurance Co., Ltd., 20 F.3d at 1366. Thus, even if the alleged statements were false and Swindol was not a safety risk, Aurora is correct in its assertion that it cannot be liable absent a showing of "malice, bad faith, or abuse." Eckman, 893 So. 2d at 1052 (citation omitted).

Swindol alleged in his Complaint that Aurora acted "willfully and maliciously" in making the allegedly slanderous remarks. However, to be sufficient, a complaint "must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action," Twombly, 550 U.S. at 555, 127 S. Ct. 1955, and "a court is not bound to accept as true legal conclusions couched as factual allegations." Iqbal, 556 U.S. at 678–79, 129 S. Ct. 1937. Swindol has alleged no facts showing that Aurora or its human resources manager acted in bad faith or with malice[5] when warning its employees about the perceived safety risk posed by the

---

[5] "[B]y 'actual malice,' it is meant that at the time the comments were published, the speaker either knew them to be false or made them in reckless disregard of their truth." Smith, 799 So. 2d at 87 (citing Speed, 787 So.2d at 631).

recently terminated and indisputably armed Swindol. Accordingly, the Court finds Swindol has failed to state a claim for defamation upon which relief can be granted, and therefore this claim is also dismissed. However, a court should not dismiss a claim at this stage "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." Hart v. Bayer Corp., 199 F.3d 239, 247 n.6 (5th Cir. 2000). Accordingly, the dismissal of Swindol's defamation claim is without prejudice.

*Conclusion*

Accordingly, the Court finds that Aurora's Motion to Dismiss Plaintiff's Complaint [4] is well taken and is therefore GRANTED. Swindol's claim for wrongful discharge is dismissed with prejudice. However, Swindol's claim for defamation is dismissed without prejudice. A separate order to that effect shall issue this day.

SO ORDERED on this, the 30th day of September, 2014.

    /s/ Sharion Aycock_____
  UNITED STATES DISTRICT JUDGE